**Percy Bernard DARDAR et al.**

v.

**LOUISIANA WILDLIFE & FISHERIES COMMISSION.**

**Civ. A. No. 75–1389.**

United States District Court, E. D. Louisiana.

Aug. 8, 1975.

Joseph Marcal, New Orleans, La., for plaintiffs Percy Bernard Dardar, et al.

Richard M. Troy, Jr., Asst. Atty. Gen., New Orleans, La., for State of Louisiana.

Peter Duffy, Metairie, La., for Louisiana Wildlife & Fisheries Com'n.

Before AINSWORTH, Circuit Judge, HEEBE and BOYLE, District Judges.

PER CURIAM:

Plaintiffs are five Louisiana fishermen who seek declaratory and injunctive relief, on behalf of themselves and others similarly situated, against the enforcement of LSA–

R.S. 56:499 (1975 Supp.) on the ground that it is unconstitutionally vague in its description of the kind and size of shrimp nets allowed in Louisiana waters. Plaintiffs further contend that the statute deprives them of rights guaranteed by the Fifth, Sixth, Ninth, Tenth, and Fourteenth Amendments, as well as the Commerce and Privileges and Immunities Clauses of the Constitution. The sole defendant named in the original complaint is the Louisiana Wildlife & Fisheries Commission. Jurisdiction of the Court is based upon 28 U.S.C. §§ 1331, 1343(3). Because the complaint seeks an injunction against the enforcement of a state statute, a three-judge court was requested and convened, pursuant to 28 U.S.C. §§ 2281, 2284.

The parties were directed to brief the questions of whether the three-judge court is properly convened in view of the fact that no state official was joined as a defendant and whether this is an appropriate case for federal abstention. The matter was submitted without oral argument upon receipt of the briefs.

■ Before reaching the abstention issue, the Court must first satisfy itself that all the statutory requirements for the convening of a three-judge court are met and that the Court properly has jurisdiction over the case. *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Dubois v. State of Louisiana*, 339 F.Supp. 685 (E.D.La.1972). Specifically, for a three-judge court to have jurisdiction over a complaint, an injunction must be sought against a state official restraining the enforcement of a state statute

of statewide applicability, *Moody v. Flowers*, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), and the Court must satisfy itself that the constitutional question presented is a substantial one.

■ Initially, we note that the plaintiffs have filed an amended complaint naming as a defendant the Director of the Louisiana Wildlife & Fisheries Commission. The Commission is a state agency, see LSA–R.S. 56:1 (1975 Supp.), and its Director is thereby a state official. Thus, the filing of the amended complaint moots any question with regard to the proper parties required for the convening of a three-judge court. Second, although the statute in question is part of a series of statutes whose application is confined to the coastal waters of the state, we concur with the reasoning of the three-judge court in *Dubois v. State of Louisiana, supra*, that its reach is sufficiently broad to make the matter one of statewide concern rather than of purely local import.

The substantiality of the constitutional question presented is far from certain, however. If the only challenge were to the asserted vagueness of the size of the butterfly nets, we would be quick to hold that this challenge is so frivolous that a three-judge court is not required to hear the case. *See Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). The statute prohibits the use of "a double beam trawl or butterfly net having individual nets more than twelve feet in diameter each or a single beam trawl or butterfly net greater than twenty-two feet in diameter." LSA–R.S. 56:499 (1975 Supp.).[1] Plaintiffs assert that they are using individual nets of a

---

1. LSA–R.S. 56:499 in its entirety reads as follows:

"A. No person shall take salt water shrimp with any seine or trawl with a mesh size less than three-fourths of an inch "bar" or one and one-half inch stretched, or any beam trawl or butterfly net with a mesh size less than five-eighths of an inch "bar" or one and one-fourths inch stretched. No trawl, beam trawl or butterfly net may be used in closed waters. No person shall use a seine over three thousand feet in length, provided that in closed waters no seine may be used except as specified for the taking of bait in R.S. 56:497. No person shall

use a double beam trawl or butterfly net having individual nets more than twelve feet in diameter each or a single beam trawl or butterfly net greater than twenty-two feet in diameter. Operation of beam trawl and butterfly nets shall in no way impede or restrict normal navigation, and each net shall be equipped with not less than two navigation lights when used between the hours of one-half hour after sunset to one-half hour before sunrise.

"B. For the purpose of licensing, beam trawls and butterfly nets shall be considered as trawls and R.S. 56:500 shall apply."

rectangular shape with dimensions of twelve feet by eighteen feet. They further contend that the twelve-foot-diameter limit in the statute is ambiguous, since the diameter of their rectangular net may be measured in various ways, and the legality of their nets depends upon which method of measurement is used.

This contention is frivolous. Without resorting to any mathematical computation or diagrams, it is obvious that the state legislature meant to prohibit such oversized nets as those used by the plaintiffs. The nets have an area almost twice the size of a circular net of twelve-foot diameter. Adopting the plaintiffs' definition would mean that fishermen could use whatever size nets they desired so long as the width of the nets did not exceed twelve feet. The contrary purpose and intent of this part of the statute is as clear as the deep blue sea.

■ However, plaintiffs also contend that the term "butterfly nets" is nowhere defined in the statute, unlike all other nets mentioned in that provision, see LSA–R.S. 56:311, and that they are using permissible "dip nets" rather than butterfly nets. While the substantiality of this vagueness contention is a close question, we cannot say at this early stage of the litigation that the claim is so utterly frivolous that it requires the dissolution of the three-judge court.

Having concluded that the three-judge court has jurisdiction over this case, we also have determined that this is an appropriate case for federal abstention. This is in accord with the position taken by another three-judge court in this district in a similar case involving challenges to companion provisions of the Louisiana shrimping statutes. *Dubois v. State of Louisiana, supra. See Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). As the Supreme Court has noted:

"The paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question. *Harri-*

*son v. NAACP*, 360 U.S. 167 [79 S.Ct. 1025, 3 L.Ed.2d 1152]. Compare *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377.' " *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 510–511, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257, 269 (1972), *quoting Zwickler v. Koota*, 389 U.S. 241, 249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444, 450 (1967).

■ In all respects save one, this is a classic case for federal abstention. The only challenge to the statute is the vagueness of the term "butterfly nets." The particular statute in question has never been construed by the state courts. Whatever the construction put on the term "butterfly nets" by the state court, the matter at issue here will be conclusively resolved. The asserted vagueness of the statute will then disappear and with it will go the need for a federal court to determine issues of federal constitutional law. Moreover, the regulation of the size and kind of nets used in shrimp fishing is a matter of peculiarly state concern. It would ill behoove the maintenance of proper federal/state relations for the federal judiciary to unnecessarily thrust itself into the role of arbiter over state fishing disputes.

■ The only matter which causes us some pause is that the Louisiana Supreme Court has recently held that a civil action by fishermen will not lie in state court to enjoin the enforcement of the statute and that "[t]he proper forum for testing the constitutionality of the statute is by a motion to quash in a criminal prosecution." *LaBauve v. Louisiana Wildlife & Fisheries Com'n*, 289 So.2d 150, 153 (La.1974). *See* LSA–R.S. 56:507 (1975 Supp.) While it would undoubtedly be less burdensome for plaintiffs if the state afforded them an opportunity to challenge the statute in a civil action, we do not feel that the type of remedy available under state procedure should be determinative of the federal decision regarding abstention.

■ It is important to keep separate the factors which justify a *Pullman*-type [2]

2. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

abstention from those relevant to abstention on *Younger v. Harris*[3] grounds. Of course, *Younger* and its progeny teach that the presence or absence of a pending state prosecution against federal plaintiffs will usually be determinative of the question whether the federal court will entertain a claim to enjoin the enforcement of that state criminal statute.[4] The court's chief concern in such cases is to maintain proper comity between the federal and state judiciaries. The basis for *Pullman*-type abstention rests on entirely separate grounds. The determination by a federal court to abstain in the latter type of case grows primarily out of the traditional reluctance of the federal courts to decide constitutional questions both prematurely and unnecessarily. The chief factors to be considered are whether the issue of state law is unclear and whether a decision by the state court would substantially modify or eliminate the federal constitutional question. The relevance of the type of relief available in state court lies not in its civil or criminal nature, but whether it is such as to "render unnecessary a decision of the [federal] question." *Reetz v. Bozanich, supra,* 397 U.S. at 86, 90 S.Ct. at 790, 25 L.Ed.2d at 72.

Those factors which militate in favor of *Pullman*-type abstention, as noted above, are present in the instant case. The gravamen of plaintiffs' complaint is that the alleged vagueness of the statute regulating the size and type of shrimping nets makes uncertain the scope of its application. A criminal prosecution will definitively determine whether plaintiffs may legally continue to fish with the type of nets they are now using. In such circumstances, federal abstention is appropriate.

We note, in addition, that no First Amendment rights—or, for that matter, any other substantive constitutional rights—are at issue. There is thus no claim that the threat of arrest and prosecution will deter the exercise of important constitutional rights. As we read plaintiffs' complaint, they do not contend, as they cannot, that the state legislature would be prohibited from outlawing the type of nets which they use. In these circumstances, no additional burdens result from having to defend a criminal prosecution other than those normally incident thereto.

We therefore hold that abstention is appropriate at this time but, in accordance with the "better practice," *Zwickler v. Koota,* 389 U.S. 241, 244–45, n. 4, 88 S.Ct. 391, 393–94, 19 L.Ed.2d 444, 447–48, and authorities cited therein, we retain jurisdiction pending a definitive resolution of the question in the state courts.

IT IS SO ORDERED.

**3.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**4.** While the plaintiffs bring this action in part on behalf of all persons "who have been arrested, charged, imprisoned, released on bail and whose cases are pending in the State and City Courts," Amended Complaint, ¶ 3, there is no allegation in the complaint that any of the named plaintiffs are themselves subject to pending state prosecutions and the Court has no evidence to indicate otherwise. Accordingly, the special considerations necessitated by *Younger v. Harris, supra,* are not present here.

Conversely, there is a question whether the plaintiffs have alleged sufficient threat of future prosecution to give them standing to bring this complaint. *See Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). We feel that the allegations of the complaint, though conclusory in nature, are sufficient to bring the plaintiffs within the requirements of *Steffel.* At the very least, we would allow the plaintiffs an opportunity for further factual development of the issues related to their standing to bring suit. In view of our disposition of the abstention issue, it is unnecessary to consider this matter further.